UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

NAOMI JOHANNES, Individually and on behalf of her infant grandchildren, SIMONE DOMENICK and BRANDYN AGUILAR,

                08 Civ 2384

      Plaintiffs,                      **AFFIRMATION OF**
                                  **JESSE I. LEVINE**
          -against-

THE ADMINISTRATION FOR CHILDREN'S SERVICES, JOHN MATTINGLY, individually and as Commissioner, et al,

      Defendants.

Jesse I. Levine. An attorney at law admitted to practice before this Court, affirms the following under penalty of perjury.

    1.    I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York. I submit this Affirmation in opposition to Plaintiffs' motion for a preliminary injunction. The statements contained herein are based on documents in my possession and conversations with persons with first hand knowledge of the facts.

    2.    In the instant motion for a preliminary injunction, brought by order to show cause on March 13, 2008, adult plaintiff Johannes seeks an order from this Court (1) enjoining the New York City Administration for Children's Services ("ACS")) and others from preventing Plaintiff from returning to her home at 1462 Minford Place, Bronx; (2) enjoining Children's Services from threatening to remove Simone and Brandyn from Plaintiff's home; (3) enjoining defendants from threatening Plaintiff for her refusal to engage in the fraudulent practice of applying for funds and/or assistance to secure a place of residence when she already

has a home; (4) enjoining defendants from threatening Plaintiff for refusal to submit to a psychological examination and (5) enjoining defendants from prohibiting family members of the infant plaintiffs from visiting said infants and prohibiting the infant plaintiffs from enjoying a normal family relationship with other members of the their family without probable cause and without court order.

3. The adult plaintiff in this case, Naomi Johannes, is the grandmother and legal guardian of the infant plaintiffs, Simone and Brandyn. For years she has repeatedly brought the infant Simone to hospital for treatment of alleged seizures. In some cases medication was administered at the insistence of the maternal grandmother, although medical examination did not reveal seizures.

4. On October 16, 2007, ACS began an investigation into the safety of the infant plaintiffs based on a report from Montefiore Medical Center. The report concerned the excessive hospitalization of Simone based on the reports by plaintiff Johannes that Simone suffered seizures.

5. In 2005, when Simone was 18 months old, Johannes came to Montefiore and complained that Simone was suffering from symptoms that resembled seizures. Notwithstanding a normal EEG result, Johannes successfully insisted that the child receive medication commonly given for seizure.

6. In July 2006 Johannes again brought the child in, reporting funny eye movements and seizures. The child was monitored by video for seven days and no seizures were observed.

7. In September 2007, Johannes again reported that Simone was suffering seizures. Johannes stated that teachers at the Jewish Guild for the Blind, where Simone is a

student, also witnessed the seizures. The hospital's case manager contacted the school and was told by the school's director and nurse that they had never witnessed any seizure or told Johannes that they had seen such episodes. Simone was hospitalized for eight days without any episodes of seizure.

8. Based on that record, the hospital caseworker believed that Simone was being placed in danger of serious harm by virtue of the fabrication of medical conditions by Johannes. See excerpt from Investigation Progress Notes of Sharon Simmons, ACS Child Protection Specialist, annexed hereto as Exhibit "A".

**The State Court Proceedings**

9. ACS filed a petition pursuant to Article 10 of the Family Court Act on October 19, 2007 alleging neglect on the part of Johannes. The petition alleged that Johannes subjected Simone to unnecessary medical testing, hospitalization and treatment. The petition alleged derivative neglect as to Brandyn.

10. On the return of the petition, after a preliminary hearing pursuant to § 1027 of the Family Court Act, the Family Court found imminent risk and remanded the children to the custody of ACS. The children were placed in non kinship foster care on that day, and subsequently placed in kinship foster care with their maternal aunt, plaintiff's daughter, on January 7, 2008, where they currently reside

11. Johannes requested a hearing pursuant to §1028 of the Family Court Act for immediate return of the children, and proceedings were scheduled for October 23, 25, 26 and 29, 2007. (That section requires the authority removing the child to demonstrate that there is continued risk of danger to the child that justifies continued separation while the underlying proceeding is completed).

12. The parties reached a settlement based on the understanding that ACS would explore a family resource (the childrens' maternal aunt who is Johannes' daughter) and if the resource was approved, the children would be placed with her. The Court held subsequent conferences with the parties concerning continued placement of the children on November 19 and 21, 2007. See exhibit to the Levine Affirmation

13. Johannes then filed a series of Orders to Show Cause in the Family Court, requesting, inter alia, a) dismissal of, or summary judgment in favor of Johannes on the original petition, b) immediate return of the children, c) resumption of the §1028 proceeding or an immediate fact finding hearing on the petition.

14. The Family Court considered the amended order to show cause, the opposition of ACS and the childrens' law guardian annexed hereto as Exhibits "B" and "C" and Johannes' reply papers. §1028 hearing or the §1027 fact finding hearing; On December 14, 2007, the Court issued a decision denying the motions for dismissal and summary judgment, noting that a fact finding hearing on the petition is mandated by law. The court granted the request for a fact finding hearing and determined that the request for the 1028 hearing was moot. The decision is annexed hereto as Exhibit "D".

15. Johannes appealed from that decision as of right under § 1112 of the Family Court Act and sought interim relief from the Appellate Division, First Department. The relief sought included immediate resumption of the hearing under § 1028 of the Family Court Act or commencement of a fact finding hearing on the original petition..

16. The relief was granted on December 19, 2007 to the extent of resumption of the § 1028 hearing and the hearing was held on January 3, 2008. At that time, Johannes' counsel agreed that the children would be placed in the kinship foster care of Nzinga Adams,

Johannes' daughter, and told the Court he would not be calling any witnesses, but wanted to move for summary judgment based on the case presented by ACS.

17. On January 7, 2008 the Family Court issued a short form order remanding the children to the custody of ACS but to reside with Nzinga Adams.. The court also issued a decision summarizing the evidence presented by ACS and found that continued residence with Johannes would put the children at imminent risk See Exhibit "E" annexed hereto. No appeal was taken from the January 7, order.

18. The children reside with Ms. Adams at this point. It is not clear where Ms. Johannes resides. Pursuant to Order of the family Court, she visits the children at an ACS facility and is not permitted to reside or visit the children at Ms. Adams' home.

19. I have been advised by the attorneys for ACS that the failure to appear in opposition to the motion for a Temporary Restraining Order was the result of confusion as to when the appearance would be made, and not an indication of consent to the application.

20. I have been advised by Indji Bessim, Esq. Law Guardian for the infant plaintiffs that she opposes the Plaintiffs' application.

WHEREFORE, it is respectfully requested that the Plaintiffs' motion for a preliminary injunction be denied in all respects.

April 7, 2008

[signature]

# INVESTIGATION PROGRESS NOTES

***** WARNING *****
CONFIDENTIAL INFORMATION
AUTHORIZED PERSONNEL ONLY

**Case Name:** Johannas, Naomi  
**Case ID:** 22283193

6) According to Ms Adams, child receives speech therapy through Early Intervention because of speech difficulties. Mother states that child will be undergoing speech therapy through Visiting Nurse Service (VSN) until he is 3 years old.

7) Child's basic needs with regards to food, clothing and shelter appears to be adequately met. Child sleeps in a crib in the bedroom which he shares with his mother. CPS is informed by Ms Adams that that Child is never left at home alone, since either Ms Adams (mother), Ms Johannas (grandmother) or Ntuku (uncle) is always present at home.

8) Namer has a dark brown skin complexion and dark brown eyes. He appears to be in good physically health.

9) Namer appears to be quiet having little engagement with CPS, except for when CPS asked to have his feeding bottle that filled filled with milk. Child promptly passed his feeding bottle to CPS with a smile.

10) CPS was told by mother Ms Adams that child has speech problems, for which he is receiving speech therapy through VNS.

************************************************End Of Note************************************************

**Event Date:** 10/17/2007  
**Entry Date:** 10/18/2007  
**Author:** Simmons, Sharon  
**Method:** Phone  
**Type(s):** Collateral Contact  
**Purpose(s):** Investigation  
**Other Participant(s):** Other  
**Focus:** Aguiar, Brandyn; Domenick, Simome; Johannas, Naomi;  

**Event Time:** 8:55:00 AM  
**Dist.Agy:** A66  

**Note Status:** Final  
**Entered By:** Simmons, Sharon  

## Progress Note Narrative:

CPS spoke with Ms Linda Lightsone LCSW, Case Manager at Montefiore Medical Center. CPS had contacted Ms Lightstone on 10/16/2007, leaving a voice mail message requesting contact CPS. Ms Lightstone informed CPS the following: Ms Naomi Johannes Legal Guardian and grandmother of Simone Domenick currently had child hospitalized at Montefiore Medical Center for the third time after reporting that Simone experiences seizures. Ms Lightstone states that in 2005 when Simons was 18 months old, Ms Johannes came to Montefiore Medical center and complained that Simone was experiencing symptoms that resembled seizures. Ms Lightstone indicates that an EEG test was administered that produced normal results. However, according to Ms lightstone, due to the insistence of Ms Johannas, MD Djukic prescribed Tegretol for the child. This is a medication generally prescribed for seizures. Then in 7/2006, Ms Johannas again had Simone admitted to Montefiore Medical Center following reports of funny eye movements and seizures. Once again according to Ms Lightstone, Simone was placed on video monitoring for 7 consecutive days 24 hours per day during which no seizure were identified. Recently in September 2007, Ms Johannas again reported that Simone was experiencing seizure. Ms Lightstone indicated that Ms Johannas insisted to the hospital staff that teachers and other individuals at the Jewish Guild for the Blind, where Simone is a student, had reported that they had also witnessed Simone having the seizure. Upon contacting the the Jewish Guild for the Blind and speaking with the School's Director as well as Mary Ann Siegel, the school nurse, Ms Lightstone states that both individuals deny ever witnessing Simone having seizure or telling Ms Johannas that Simone had been experiencing seizures. Ms Lightstone further indicates, that in view of the fact that Ms Johannas frequently fabricated of Simone's medical conditions, Simone was being placed in danger of serious harm at the hands of her MGM, Ms Johannas who Ms Lightstone believes suffers from Munchausen's Syndrome by Proxy.

************************************************End Of Note************************************************

**Event Date:** 10/17/2007  
**Entry Date:** 10/18/2007  
**Author:** Simmons, Sharon  
**Method:** Face To Face  
**Location:** Hospital/Health Facility  
**Type(s):** Casework Contact  
**Purpose(s):** Investigation  
**Other Participant(s):** Other  
**Family Participant(s):** Domenick, Simome;  

**Event Time:** 11:15:00 AM  
**Dist.Agy:** A66  
Unannounced Visit

**Note Status:** Final  
**Entered By:** Simmons, Sharon  

**Date Printed:** 3/3/2008 2:25:14 PM

EXHIBIT A

Page: 5

FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Hon. Lori Sattler

---------------------------------------------------------X

Commissioner of Social Services on behalf of:

    Simone Domenick
    Brandyn Aguilar
Children Alleged to be Neglected by:

    Naomi Johannes

**AFFIRMATION IN OPPOSITION**
Docket No.:   NN-24618,20/07

Part 3

---------------------------------------------------------X

    Wilfredo Suarez, Esq., an attorney licensed to practice before the Courts of this State, affirms the following is true upon penalty of perjury pursuant to Section 2106 of the New York Civil Practice Law & Rules:

1. I am of counsel to RONALD RICHTER, Special Assistant Corporation Counsel to MICHAEL CARDOZO, Corporation Counsel for the City of New York and JOHN B. MATTINGLY, Commissioner of Administration for Children's Services.

2. I make this Affirmation in Opposition to the Respondent's application for, 1) summary judgment and/or dismissing the Petition, 2) the immediate return of the subject children.

3. The Respondent's motion for summary judgment and/or dismissal should be denied in its entirety. A summary judgment should only be granted where there are no triable issues of fact. Clearly the allegations in the petition and the report presented in evidence during the October 24, 2007 1028 hearing raise triable issues of fact. The Respondent cites Michael V._, however in that case a summary judgment in a child protective matter was in favor of the Petitioner which is distinguishable from the

EXHIBIT B

present matter in that: it is well settled that in considering a motion for summary judgment or a motion to dismiss for failure to state a cause of action, allegations in the pleadings must be assumed to be true and liberally construed, giving the pleading party the benefit of every favorable inference. Williams v. Aliano, 246 A.D.2d 592. In the pleadings, the Petitioner alleges that the Respondent is inventing the subject child's symptoms, resulting in unnecessary hospitalizations and/or treatments. According to Dr. Cahill's preliminary report, which was entered in evidence during the withdrawn 1028 hearing, the invented symptoms date back as far as 8/23/2004 when the child was only 7 months old. Exposing a young child to a battery of tests, including at least one MRI, is detrimental to that child's overall physical health and eventually to the child's mental health. If assumed true, the Petitioner's pleadings state a cause of action, thereby making a summary judgment or a dismissal of the petition at this juncture premature.

Furthermore, in her argument for summary judgment the Respondent cites Matter of Myriam L, which lays out the Petitioner's burden to "demonstrate by admissible evidence the existence of a triable issue of fact." However, the burden can only be applied "when the moving party (Respondent) has demonstrated that it is entitled to summary judgment." The Respondent has not yet crossed that threshold.

4. In her affirmation, the Respondent lays out contentions to the Petitioner's evidence at the 1028 hearing commenced on October 24, 2007. At that hearing the Respondent had a full and fair opportunity to litigate the issues of imminent danger and the return of the subject child to the Respondent. The Respondent could have called witnesses (i.e., school personnel, relatives, and friends) who had witnessed the various symptoms (i.e., frequent urination) which the Respondent claims the subject child

suffered. Instead the Respondent withdrew the 1028 prior to its conclusion and now wants to inappropriately litigate those issues via a motion. The Petitioner will not respond to those contentions in this Opposition. The Respondent accuses the Petitioner of breaching the 1028 settlement agreement. The Respondent indicates that the Petitioner guaranteed that the subject children would be placed with a relative, Dawn Johannes. However, it was clearly stated to the Respondent that placement with a relative is subject to the rules and regulations of ACS. The caseworker conducted an expedited home study of Dawn Johannes' home and it was found to be safe and appropriate. In addition, despite Dawn Johannes' claim that she lived alone, the caseworker found another adult living in the home. That person was cleared and found to have an unfounded child protection case in Westchester County (this fact did not stop the placement of the children with Dawn Johannes). The caseworker also ordered beds for the subject children. At that time Dawn Johannes called the caseworker and told her that she could not take the subject children because they were not in school. The caseworker replied that the children would be placed in school as soon as possible. Dawn Johannes then stated that not withstanding the school issue she would not take the subject children because her babysitter (the other adult living in her home) had found full time employment. When the beds arrived at her home Dawn Johannes sent them back.

Consequently, ACS began an exploration of Nzinga Adams (a relative of the subject children) as a resource. Her home was found to be safe and appropriate, and she was cleared through the State Central Register. However, Ms. Adams works 12 hour shifts and has not provided the agency with a child care plan. The agency explored the day care option but the hours in question are not feasible. The subject children remain in non-kinship foster care and are attending school.

5. The Respondent further affirms that when she would take the subject child for Medical treatment she was acting as a reasonably prudent caregiver. The respondent accurately points out that in Dr. Cahill's report a seizure-like episode was witnessed in the hospital. What she fails to mention is that the report states, "She (the subject child) had several similar events during this admission that were captured that were not seizures and there was no evidence on continuing EEG monitoring seizure activity." The Respondent was aware of these findings. Furthermore, **under the objective standard imposed in a proceeding pursuant to <u>Family Court Act article 10</u>**, "good faith, good intentions, and even best efforts, are not, per se, defenses to a child protective petition". <u>Matter of Katherine C., 122 Misc 2d 276, 278</u>.

The Respondent argues about the seizure-like symptoms exclusively but Dr. Cahill's report states, "In summary, Simone is a generally healthy child with minor eye movement abnormality. She has been worked up for GI symptoms, failure to thrive, vomiting, leg pain, (Feb 2005) seizures (reported by grandmother to be observed by school, and not substantiated at Montefiore), frequent urination (not observed in the hospital, bradycardia and apnea." It is clear that the seizure-like symptoms were only some of the unsubstantiated symptoms reported by the Respondent.

**WHEREFORE**, petitioner prays that this Court not grant the Respondent's motion for;
a) Summary judgment and/or dismissal of the Petition.
b) Immediate return of the child.

DATED:    Bronx, New York
          December 11, 2007

                                            _____
                                            Wilfredo Suarez, Esq.

FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Hon. Lori Sattler

---------------------------------------------------------- X

Commissioner of Social Services on
behalf of:

                                                     LAW GUARDIAN'S
                                                     **AFFIRMATION IN OPPOSITION**

Simone Domenick
Brandyn Aguilar                           Docket No.:   NN-24618,20/07

Children Alleged to be Neglected by:

Naomi Johannes                       Part 3

---------------------------------------------------------- X

    Indji Bessim,, Esq., an attorney licensed to practice before the Courts of this State, affirms the following is true upon penalty of perjury pursuant to Section 2106 of the New York Civil Practice Law & Rules:

1. I am the law guardian assigned to represent the Domeneck and Aguilar children in the above captioned neglect proceeding, and as such am fully familiar with the facts and circumstances of this matter.

2. I make this Affirmation in Opposition to the Respondent's motions to dismiss, for summary judgment, and an immediate return of the children to the respondent.

### PETITION STATES A VALID CAUSE OF ACTION

3. In a motion to dismiss a pleading pursuant to CPLR 3211(a)(7), the petition, and all reasonable inferences that may be drawn from those allegations, must be accepted as true and the complaint must be liberally construed in favor of the petitioner. See Anuita v. Koch, 579 N.Y.S.2d 335 (1st Dept., 1992).

EXHIBIT C

4. The central question on a motion to dismiss is whether the petition's allegations state a legally cognizable cause of action. See Held v. Kaufman, 91 N.Y.2d 425 (1998). The court's role is simply to determine whether the facts, as alleged, fit into any valid legal theory. See Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y. 2d 409 (2001).

5. In deciding a pre-trial motion, the court is not authorized to assess the relative merits of the petition's allegations against the respondent's contrary assertions or to determine whether or not the petitioner has produced evidence to support his claims. See Salles v. chase Manhattan Bank, 754 N.Y.S. 2d 236 (1st Dept., 2002). In making this determination, the allegations of fact set forth in the petition and the instant opposition to defendant's motion are accepted as true, liberally construed and given every favorable inference. Under this standard, the petition is sufficient to survive dismissal.

6. The instant petition alleges that Simone Domenick and Brandyn Agular are children less than eighteen years of age whose physical, mental or emotional conditions have been impaired or are in imminent danger of becoming impaired as a result of Respondent's actions in taking the child Simone, for repeated, excessive and unnecessary hospital visits thus subjecting the child to extensive hospitalizations for unnecessary testing.

7. The petition also alleges that Dr. Cahill, the director of the Child Advocacy center at Montefiore Medical Center believes that the respondent is creating symptoms for the child, Simone and that this pattern of behavior may escalate putting Simone at risk of harm. The potion further alleges that the behavior on the part of the respondent is consistent with someone who might be suffering from Munchausen's Syndrome by Proxy.

8. These allegations, if accepted as true, coupled with the inferences that reasonably flow there from, states a valid cause of action for neglect.

## DISMISSAL INAPPROPRIATE UNDER FAMILY COURT ACT 1051(C) WITHOUT A FACTFINDING HEARING

9. As set forth above, the petition, on its face, satisfies New York's liberal pleading standard. Respondent's alternative argument that Court intervention is no longer required pursuant to family Court Ace 1051(c) also must fail at this stage.

10. Since the petition has substance, the allegations should be resolved at a hearing to determine whether or not the aid of the Court is still required. The First department has recently found that where the Court failed to hear the substance of a neglect petition, it was premature to dismiss the case under Family Court Act 1051(c0. As such, the case was remanded for a fact-finding hearing. See In Re Kirk V., 807 N.Y.S. 2d 326 (1st Dept., 2005).

11. Since the petition states a valid cause of action for neglect based upon inappropriate supervision and guardianship, failure to provide a minimum degree of care and possible mental illness. It appears that the aid of the Court is still required to ensure compliance with services.

## REOPENING OF 1028 HEARING

12. The hearing pursuant to Family Court Act Section 1028 was commenced on October 23, 2007 with testimony from ACS caseworker, Sharon Simmons. The hearing continued on October 25, 2007. On October 29, 2007, the 1028 hearing was discontinued with the understanding that ACS would explore family resources for the subject children. The respondent initially offered Dawn Johannes, a maternal great aunt to the children as a possible resource. ACS appropriately investigated her home and her background. On November 19, 2007, in court, it was reported by respondent's counsel that Ms. Dawn

Johannes was no longer able to avail herself as a resource for the children. On that date, a request was made for Nzinga Adams, a maternal aunt to the children to be investigated. ACS once again conducted an investigation of Ms. Adams and her home and on November 21, 2007 reported to the Court that it was deemed safe and appropriate for the subject children. At some point between November 21, 2007 and the filing of the respondent's motion to dismiss, Ms. Adams also withdrew herself from consideration as a resource.

13. Based on the above, the law guardian has no opposition to the resumption of the 1028 hearing.

14. The law guardian takes no position with respect to the respondent's request for public funds.

WHEREFORE, it respectfully requested that the motions to dismiss the petition and for summary judgment be denied.

DATED:   Bronx, New York
         December 11, 2007

                                         _____
                                         Indji Bessim, Esq.

At a term of the Family Court of the State of New York, held in and for the County of Bronx, at 900 Sheridan Avenue, Bronx, NY 10451, on December 14, 2007

PRESENT: Hon. Lori Sattler

In the Matter of

SIMONE DOMENICK
BRANDYN AGULAR

Docket #: NN-24618-20/07

DECISION

A Child Under Eighteen Years of Age
Alleged to be neglected by:

Motion Seq #s 001 and 002

NAOMI JOHANNES

Respondent.

    In this proceeding brought pursuant to Article 10 of the Family Court Act (hereinafter "FCA"), the Administration for Children's Services (hereinafter "Petitioner") filed a sworn neglect petition dated October 19, 2007 against Naomi Johannes (hereinafter "Respondent"). Petitioner alleges Respondent failed to exercise a minimum degree of care in providing the subject child Simone Domenick with proper supervision or guardianship in that Respondent subjected Simone to unnecessary medical testing, hospitalization and treatment, and alleges derivative neglect as to the child Brandyn Agular. Petitioner withdrew its petition on behalf of a third child, Namer Copeland, on October 29, 2007.

    Finding imminent risk, this Court remanded the subject children at arraignment. Respondent requested a hearing pursuant to N.Y. Fam.Ct. §1028 (hereinafter "1028 proceeding") on that date, and proceedings were scheduled for October 23, 25, 26 and 29, at which time the hearing settled based on the understanding that Petitioner would explore a family resource promptly and, if the resource could be approved, would place the children in that home. Subsequent conferences were held on November 19 and 21 regarding the children's continued placement, and on November 28, Respondent filed an Order to Show Cause. A week later, before the return date on the original Order to Show Cause, Respondent filed two Amended Orders to Show Cause requesting, inter alia, dismissal of the petition and/or summary judgment on behalf of Respondent; immediate return of the children; resumption of a proceeding pursuant to N.Y. Fam. Ct. §1028 or an immediate fact-finding; a written statement of the charges; and funds for overnight transcripts and for experts to testify at trial and/or assist in preparation for trial. After consideration of Respondent's amended Orders to Show Cause, Petitioner's and Law Guardian's Affirmations in Opposition, and Respondent's Reply, the Court herein issues its decision on the issues raised.

    Respondent's application for summary judgment is denied. Summary judgment is a drastic remedy which should not be granted where there is any doubt that triable issues of fact are

EXHIBIT D

Page: 2 of 2
Docket No: NN-24618-20/07

presented. <u>Sillman v. Twentieth Century-Fox Film Corp.</u>, 3 N.Y.2d 395 (N.Y. 1957). In this matter, triable issues of fact remain as to the child's alleged medical condition and respondent's actions as they relate to the subject child. <u>Alvarez v. Prospect Hosp.</u>, 68 NY2d 320 (N.Y. 1986).

Similarly, Respondent's motion to dismiss is denied. The Court has found that in child protective proceedings, dismissal is a harsh remedy which ought not be imposed without the utmost caution as the consequences may be harmful to the welfare of the children. <u>In re Shevon C.</u>, 163 AD2d 14 (1st Dept. 1990). In addition, the Court has held that in furtherance of the purpose of protecting children "from injury or mistreatment" and "[safeguarding] their physical, mental and emotional well-being" (N.Y. Fam. Ct. §1011), the statute requires that "after ACS files a neglect petition, a court must conduct a fact-finding hearing." <u>In re Jasmine S.</u>, 1 AD3d 257, 259 (1st Dept. 2003); NY Fam. Ct. §1051. The failure to do so is grounds for reversal. <u>In re Kirk V.</u>, 24 AD3d 277 (1st Dept. 2005).

Respondent's application for public funds for transcripts is granted solely to the extent that, upon submission of orders that comply with N.Y. County Law §722-c, she may be granted public funds to secure regular transcripts for the instant Family Court proceeding. Statutory and case law do not support the provision of funds for overnight transcripts. As for funds for expert testimony, Respondent's application is granted to the extent that reasonable funds may be provided pursuant to N.Y. County Law §722-c if the request for funds complies with statutory requirements.

Respondent's application for the continuation of the 1028 hearing is deemed moot as this Court is granting Respondent's request for a fact-finding hearing. This matter is transferred to Part 9 for further proceedings.

All matters not decided herein are hereby denied.

DATED: DECEMBER 14, 2007        ENTER

HON. LORI SATTLER
FAMILY COURT JUDGE

At a term of the Family Court of the State of New York, held in and for the County of Bronx, at 900 Sheridan Avenue, Bronx, NY 10451, on January 7, 2008

**PRESENT:** Hon. Lori Sattler

In the Matter of

SIMONE DOMENICK
BRANDYN AGULAR

Docket #:   NN-24618-20/07

**DECISION AFTER HEARING PURSUANT TO FCA § 1028**

Children Under Eighteen Years of Age
Alleged to be neglected by:

NAOMI JOHANNES

Respondent.

In this proceeding brought pursuant to Article 10 of the Family Court Act (hereinafter "FCA"), the Administration for Children's Services (hereinafter "Petitioner") filed a sworn neglect petition dated October 19, 2007 against Naomi Johannes (hereinafter "Respondent"). Petitioner alleges Respondent failed to exercise a minimum degree of care in providing the subject child Simone Domenick with proper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, or by any other acts of a similarly serious nature requiring the aid of the Court, and alleges derivative neglect as to the child, Brandyn Agular. Petitioner withdrew its petition on behalf of a third child, Namer Copeland, on October 29, 2007.

The petition contains three paragraphs of allegations concerning the 4-year-old subject child Simone. At the initial arraignment of the Respondent, this Court found that the children were at imminent risk of harm and remanded them to the Commissioner of Social Services. Thereafter, Respondent made an application for the return of the children pursuant to FCA §1028. A hearing was held on October 23, 25, 26 and 29. After further conferences and motions, the hearing concluded on January 3, 2008. Respondent did not testify and presented no case but rather requested a decision on her application based on the testimony and evidence adduced during Petitioner's case.

FCA § 1028(a) provides that the Court must grant the application unless a return of the child would present an imminent risk to the child's life or health. The Court has found that the emotional health of the child, and not simply physical health, is at issue when making a decision as to whether to return a child. Matter of Kimberly H., 242 AD2d 35 (1st Dept. 1998).

On the basis of the documentary evidence provided and the credible testimony of the one witness to testify in this proceeding, ACS caseworker Sharon Simmons, the Court finds that the return of the child would indeed present an imminent risk to the child's health. At the time of the filing of the neglect petition, this three-year-old child had been admitted three times for lengthy stays to the epilepsy unit at Montefiore Medical Center, most recently on the eve of the filing of the petition, and monitored as an inpatient based on Respondent's representations that the subject

EXHIBIT E

child was experiencing seizures as well as other symptoms, but the EEG showed no seizure activity. From the child's infancy, the Respondent initiated repeated hospital and clinic visits and, as a result, medication was prescribed and medical procedures were done, including an upper GI series, cardiac monitoring, vaginal exam, EEG with interventional radiology, and repeated urinalyses. Symptoms reported by the Respondent were not observed by hospital staff, including vaginal pain and odor (11/05), an episode of non-responsiveness during epilepsy monitoring (4/06), limping (5/06), and urinary problems (10/07). The two occasions where Simone was observed by hospital staff to have brief periods of unresponsiveness in March and April 2006 were not found to reflect seizure activity. In total, the Respondent brought Simone to the emergency department and epilepsy department on 11 occasions, and to other departments on 19 occasions, though she is described in the Montefiore CAC report as "a generally healthy child with minor eye movement abnormality."

The caseworker testified regarding interviews with school personnel and Montefiore medical and social work staff, in which those collaterals consistently described the Respondent as fabricating symptoms, "constantly" describing the child as ill in the child's presence, and repeatedly subjecting the child to unnecessary medical interventions. Significantly, the caseworker testified that Dr. Cahill of the Montefiore Children's Advocacy Center was of the opinion that the Respondent's behavior placed the child at risk of harm. Whether or not the behaviors testified to in the 1028 proceeding and described in the neglect petition are consistent with Munchausen's Syndrome by Proxy, or factitious disorder by proxy (the term used in the CAC report), the Court finds that those behaviors by the Respondent put the child at imminent risk of physical and emotional harm. In the Matter of Anesia E., 4 Misc. 3d 1006(A), (NY Fam. Ct., 2004), In the Matter of John W., 7 Misc.3d 1020(A), (NY Fam. Ct., 2004). Matter of C. Children, 249 AD2d 540 (2nd Dept. 1998).

Accordingly, Respondent's application for the return of the children is denied.

DATED: JANUARY 7, 2008          ENTER

_____
HON. LORI SATTLER
FAMILY COURT JUDGE