08 Civ 2384

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAOMI JOHANNES, individually and on behalf of
her infant grandchildren, SIMONE DOMENICK
and BRANDYN AGUILAR

                                                    Plaintiffs

                    -against-

THE ADMINISTRATION FOR CHILDREN'S
SERVICES JOHN MATTINGLY, individually and
as Commissioner, et al

                                                    Defendants.

---

## MUNICIPAL DEFENDANTS'
## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR A
## PRELIMINARY INJUNCTION

---

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
                    Attorney for Defendant

100 Church Street
New York, N.Y. 10007

Of Counsel: Jesse Levine
Tel: (212) 442-3329

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS .................................................................................. 3

ARGUMENT ................................................................................................... 7

POINT I ..................................................................................................7

BECAUSE PLAINTIFFS CANNOT MEET THEIR
BURDEN OF PROOF TO DEMONSTRATE
IRREPARABLE HARM AND A CLEAR OR
SUBSTANTIAL LIKLIHOOD OF SUCCESS ON THE
MERITS THEIR MOTION FOR A PRELIMINARY
INJUNCTION SHOULD BE DENIED...................................................... 7

Plaintiff Cannot Demonstrate Irreparable Injury
or a ""Clear and Substantial Likelihood"" of
Success on the Merits of their Claims................................................8

POINT II ..................................................................................................9

ASUMING ADULT PLAINTIFF, JOHANNES, HAS A
CONSTITUTIONALLY PROTECTED RIGHT TO THE
CARE AND CUSTODY OF INFANT PLAINTIFFS
SIMONE AND BRANDYN THE FAMILY COURT
PROCEEDINGS AFFORDED HER DUE PROCESS. ........................... 9

POINT III..................................................................................................12

THE INTERESTS OF FEDERAL-STATE COMITY
MILITATE AGAINST THE EXERCISE OF INTRUSIVE
FEDERAL INJUNCTIVE POWER IN AN AREA OF
FUNDAMENTAL STATE CONCERN.................................................. 12

CONCLUSION.......................................................................................... 17

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Pages</u>

<u>Alpern v. Lieb,</u>
   38 F.3d 933 (7th Cir. 2004)....................................................................16

<u>Ankenbrandt v. Richards,</u>
   504 U.S. 689 (1992)............................................................................12

<u>Beal v. Stern,</u>
   184 F.3d 117 (2d Cir. 1999)..................................................................8

<u>Brewer v. West Irondequoit Central Sch. District,</u>
   212 F.3d 738 (2d Cir. 2000)..................................................................7

<u>D.D. v. New York City Board of Education,</u>
   2004 U.S. Dist. LEXIS 5189 (E.D.N.Y. 2004)........................................7

<u>District of Columbia Court of Appeals v. Feldman,</u>
   460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983).........................13

<u>Fifth Ave. Presbyterian Church v. City of New York,</u>
   293 F.3d 570 (2d Cir. 2002)..................................................................8

<u>Grieve v. Tamerin,</u>
   (E.D.N.Y. August 25, 2000), 2000 U.S. Dist. LEXIS 12210 .................15

<u>Harley v. City of New York,</u>
   36 F. Supp. 2d 136 (E.D.N.Y. 1999), aff'd, 208 F.3d 203 (2d Cir. 2000)................9

<u>Hernstadt v. Hernstadt,</u>
   373 F.2d 316 (2d Cir. 1967)..................................................................13

<u>Holbert v. Cohen-Gallet,</u>
   2006 U.S. Dist. LEXIS 1869 (E.D.N.Y. 2006)..............................14, 16

<u>JSG Trading Corp. v. Tray-Wrap, Inc.,</u>
   917 F.2d 75 (2d Cir. 1990)....................................................................7

<u>Kentucky Department of Corrections v. Thompson,</u>
   490 U.S. 454, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989).......................10

<u>Latino Officers Associate v. City of New York,</u>
   196 F.3d 458 (2d Cir. 1999)...............................................................8, 9

**Cases**                                                                                  **Pages**

Lomtevas v. Lomtevas,
   2006 U.S. Dist. LEXIS 5820 (E.D.N.Y. 2006) ...................................................................13

Makarova v. United States,
   201 F.3d 110 (2d Cir.2000)..............................................................................................13

Mendez v. Heller,
   530 F.2d 457 (2d Cir. 1976)............................................................................................16

Miller v. County of Nassau,
   467 F. Supp. 2d 368 (E.D.N.Y. 2006) ...........................................................................16

Moccio v. New York State Office of Court Admin.,
   95 F.3d 195 (2d Cir. 1996)..............................................................................................13

Moore v. Sims,
   442 U.S. 415 (1979)..........................................................................................12, 15, 16

Neutering v. Broach,
   732 F. Supp. 333 (E.D.N.Y. 1990) ...........................................................................12, 16

New Orleans Public Serv., Inc. v. Council of New Orleans,
   491 U.S. 350 (1989)........................................................................................................16

New York City Environmental Justice Alliance v. Giuliani,
   50 F. Supp. 2d 250 (S.D.N.Y. 1999)................................................................................9

Nicholson v. Scopetta,
   344 F.3d 154 (2d Cir. 2003)............................................................................................11
   3 N.Y. 3d 357 (2004)

Petersen v. Fox,
   488 F. Supp. 2d 18 (D.N.H. 2007)..................................................................................16

Phifer v. City of New York,
   289 F.3d 49 (200).........................................................................................… 13

Philip Morris, Inc., v. Blumenthal,
   123 F.3d 103 (2d Cir. 1997).......................................................................................14, 16

Rabinowitz v. New York,
   329 F. Supp. 2d 373 (E.D.N.Y. 2004) ...........................................................................12

Reuters Ltd. v. United Press International, Inc.,
   903 F.2d 904 (2d Cir. 1990)..............................................................................................8

**Cases**                                                                    **Pages**

Rodriquez v. McLoughlin,
   214 F.3d 328 (2d Cir. 2000)....................................................................9

Rooker v. Fidelity Trust Company,
   263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923)................................13

Shapiro v. Kronfeld,
   2004 U.S. Dist. LEXIS 23807 (S.D.N.Y. 2004)....................................14

Torres v. Family Court/Administration for Children's Services,
   2001 U.S. Dist. LEXIS 14751 (S.D.N.Y. 2001)....................................12

United States v. Vazquez,
   145 F.3d 74 (2d Cir. 1998)....................................................................13

Woodfield Equities, L.L.C. v. The Incorporated Village of Patchogue,
   357 F. Supp. 2d 622 (E.D.N.Y. 2005) ....................................................8

Wright v. Giuliani,
   230 F.3d 543 (2d Cir. 2000)....................................................................8

Younger v. Harris,
   401 U.S. 37 (1971)...............................................................................14

**Statutes**

42 U.S.C. §1983.........................................................................................1

28 U.S.C. §2283.......................................................................................16

N. Y. Family Court Act §1027...............................................................4, 10

N. Y. Family Court Act § 1028 ............................................................4, 5, 10

N. Y. Family Court Act § 1112...........................................................5, 10, 11

N. Y. Family Court Act, Article 10 ..........................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------    x

NAOMI JOHANNES,  Individually and on behalf of her infant
grandchildren, SIMONE  DOMENICK and BRANDYN
AGUILAR,

               08 Civ  2384

          Plaintiffs,

     -against-

THE  ADMINISTRATION  FOR  CHILDREN'S  SERVICES,
JOHN MATTINGLY, individually and  as Commissioner,  et al,

          Defendants.

------------------------------------------------------------------    x


## MUNICIPAL   DEFENDANTS'   MEMORANDUM OF  LAW  IN  OPPOSITION  TO  PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

   Plaintiff, Naomi Johannes, ("Plaintiff" or "Johannes") the grandmother and legal

guardian of infant plaintiffs Simone Domenick and Brandyn Aguilar ("infant plaintiffs" or

"Simone and Brandyn"),  brings this action pursuant to 42 U.S.C. §1983 alleging that the infant

plaintiffs were removed from her care in violation of her rights under the United States

Constitution.  She brought the action on her own behalf and on behalf of Simone and Brandyn.

    In the instant motion for a preliminary injunction, brought by order to show cause

on March 13, 2008, plaintiff Johannes seeks an order from this Court  (1) enjoining the New

York City Administration for Children's Services ("ACS")) and others from preventing Plaintiff

from returning to her home at 1462 Minford Place, Bronx; (2) enjoining Children's Services

from threatening to remove Simone and Brandyn from Plaintiff's home; (3) enjoining defendants

from threatening Plaintiff for her refusal to engage in the fraudulent practice of applying for

1

funds and/or assistance to secure a place of residence when she already has a home; (4) enjoining defendants from threatening Plaintiff for refusal to submit to a psychological examination and (5) enjoining defendants from prohibiting family members of the infant plaintiffs from visiting said infants and prohibiting the infant plaintiffs from enjoying a normal family relationship with other members of the their family without probable cause and without court order.

In signing the Order to Show Cause the Court issued a Temporary Restraining Order enjoining defendants from continuing ongoing proceedings in the Bronx County Family Court and/or attempting to enforce any order issued and/or arising from those proceedings.

No representative of the defendants was present when the Court issued the Temporary Restraining Order. As demonstrated by the facts and legal arguments set forth below, Plaintiff does not and cannot make the "clear" or "substantial" showing of irreparable harm or likely success on the merits required for preliminary injunctive relief that would alter the status quo for the infant plaintiffs.  Furthermore, even the temporary relief sought is directly contrary to the best interests of the infant plaintiffs, Simone and Brandyn, whose law guardian in the Family Court does not presently consent to the relief sought.

For this Court to make a determination about whether Simone and Brandyn should continue to reside with Plaintiff Johannes, and at the same time to stay the court proceedings that are required by state law, constitutes an overly intrusive exercise of federal injunctive power in an area of fundamental state concern from which the court should abstain. The determination about where Simone and Brandyn reside can only be made after a full hearing in the Family Court.

Finally, for the same reason, the temporary restraining order prohibiting defendants and the from making any application in the New York State Courts concerning Simone and Brandyn mother should be vacated.

## STATEMENT OF FACTS

**Background**

The adult plaintiff in this case, Naomi Johannes, is the grandmother and legal guardian of the infant plaintiffs, Simone and Brandyn. For years she has repeatedly brought the infant Simone to hospital for treatment of alleged seizures. In some cases medication was administered at the insistence of the maternal grandmother, although medical examination did not reveal seizures. References below are to exhibits attached to the affirmation of Jesse I. Levine, attorney for the City defendants ("Levine Affirmation").

On October 16, 2007, ACS began an investigation into the safety of the infant plaintiffs based on a report from Montefiore Medical Center. The report concerned the excessive hospitalization of Simone based on the reports by plaintiff Johannes that Simone suffered seizures. See Exhibit "A" to Levine Affirmation.

In 2005, when Simone was 18 months old, Johannes came to Montefiore and complained that Simone was suffering from symptoms that resembled seizures. Notwithstanding a normal EEG result, Johannes successfully insisted that the child receive medication commonly given for seizure. Id.

In July 2006 Johannes again brought the child in, reporting funny eye movements and seizures. The child was monitored by video for seven days and no seizures were observed. Id.

In September 2007, Johannes again reported that Simone was suffering seizures. Johannes stated that teachers at the Jewish Guild for the Blind, where Simone is a student, also

witnessed the seizures. The hospital's case manager contacted the school and was told by the school's director and nurse that they had never witnessed any seizure or told Johannes that they had seen such episodes. Simone was hospitalized for eight days without any episodes of seizure. Id.

Based on that record, the hospital caseworker believed that Simone was being placed in danger of serious harm by virtue of the fabrication of medical conditions by Johannes.

**The State Court Proceedings**

ACS filed a petition pursuant to Article 10 of the Family Court Act on October 19, 2007 alleging neglect on the part of Johannes. The petition alleged that Johannes subjected Simone to unnecessary medical testing, hospitalization and treatment. The petition alleged derivative neglect as to Brandyn.

On the return of the petition, after a preliminary hearing pursuant to § 1027 of the Family Court Act, the Family Court found imminent risk and remanded the children to the custody of ACS. The children were placed in non kinship foster care on that day, and subsequently placed in kinship foster care with their maternal aunt, plaintiff's daughter, on January 7, 2008, where they currently reside

Johannes requested a hearing pursuant to §1028 of the Family Court Act for immediate return of the children, and proceedings were scheduled for October 23, 25, 26 and 29, 2007. (That section requires the authority removing the child to demonstrate that there is continued risk of danger to the child that justifies continued separation while the underlying proceeding is completed). The parties reached a settlement based on the understanding that ACS would explore a family resource (the childrens' maternal aunt who is Johannes' daughter) and if the resource was approved, the children would be placed with her. The Court held subsequent

4

conferences with the parties concerning continued placement of the children on November 19 and 21, 2007.

Johannes then filed a series of Orders to Show Cause in the Family Court, requesting, inter alia, a) dismissal of, or summary judgment in favor of Johannes on the original petition, b) immediate return of the children, c) resumption of the §1028 proceeding or an immediate fact finding hearing on the petition.

The Family Court considered the amended order to show cause, the opposition of ACS and the childrens' law guardian, (Exhibits "B" and "C" to the Levine Affirmation), and Johannes' reply papers. On December 14, 2007, the Court issued a decision denying the motions for dismissal and summary judgment, noting that a fact finding hearing on the petition is mandated by law. The court granted the request for a fact finding hearing and determined that the request for the 1028 hearing was moot. (Exhibit "D" to the Levine Affirmation).

Johannes appealed from that decision as of right under § 1112 of the Family Court Act and sought interim relief from the Appellate Division, First Department which included a request for the resumption of the Section 1028 hearing or commencement of the fact finding hearing.. The relief was granted on December 19, 2007 to the extent that the Appellate Division ordered resumption of the § 1028 hearing, and the hearing was held on January 3, 2008. At that time, Johannes' counsel agreed that the children would be placed in the kinship foster care of Nzinga Adams, Johannes' daughter, and told the Court he would not be calling any witnesses, but wanted to move for summary judgment based on the case presented by ACS.

On January 7, 2008 the Family Court issued a short form order remanding the children to the custody of ACS but to reside with Nzinga Adams.. The court also issued a decision summarizing the evidence presented by ACS and found that continued residence with

Johannes would put the children at imminent risk  (Exhibit "E" to the Levine Affirmation). No appeal was taken from the January 7, order.

The children reside with Ms. Adams at this point. It is not clear where Ms. Johannes resides. Pursuant to Order of the family Court, she visits the children at an ACS facility and is not permitted to reside or visit the children at Ms. Adams' home.

**Relief Sought on this Motion**

Plaintiff seeks a preliminary injunction: (1) enjoining the New York City Administration for Children's Services ("ACS") and others from preventing Plaintiff from returning to her home at 1462 Minford Place, Bronx; (2) enjoining Children's Services from threatening to remove Simone and Brandyn from Plaintiff's home; (3) enjoining defendants from threatening Plaintiff for her refusal to engage in the fraudulent practice of applying for funds and/or assistance to secure a place of residence when she already has a home; (4) enjoining defendants from threatening Plaintiff for refusal to submit to a psychological examination and (5) enjoining defendants from prohibiting family members of the infant plaintiffs from visiting said infants and prohibiting the infant plaintiffs from enjoying a normal family relationship with other members of the their family without probable cause and without court order

## ARGUMENT

## POINT I

**BECAUSE PLAINTIFFS CANNOT MEET THEIR BURDEN OF PROOF TO DEMONSTRATE IRREPARABLE HARM AND A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS THEIR MOTION FOR A PRELIMINARY <u>INJUNCTION SHOULD BE DENIED.</u>**

A preliminary injunction is considered to be ""an extraordinary remedy"" that should not be routinely granted. <u>D.D. v. New York City Bd. of Educ.</u>, 2004 U.S. Dist. LEXIS 5189 *73 (E.D.N.Y.) (citing <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 80 (2d Cir. 1990)). Generally a party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) likelihood on the success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." <u>Brewer v. West Irondequoit Cent. Sch. Dist.</u>, 212 F. 3d 738, 743-44 (2d Cir. 2000).

However a significantly higher standard applies where (1) the injunction sought is mandatory, i.e., will alter, rather than maintain, the status quo; or (2) the injunction sought will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits." Brewer, 212 F.3d 738 at 744. In such cases the moving party must make a "clear" or "substantial" showing of a likelihood of success.

Although couched as a negative injunction, the order sought by plaintiff essentially requires ACS to abandon its oversight function in regard to the foster care relationship between the plaintiffs. There is presently in effect a Family Court order that prohibits Johannes from residing with or visiting the infant plaintiffs in the kinship foster home

of their aunt, Johannes' daughter. What plaintiff seeks is an order of this Court nullifying the Family Court order, That would clearly alter, not maintain, the status quo.

Finally it is well-established in this Circuit that this extraordinarily high "likelihood of success" standard of proof is necessary to enjoin government action taken in the public interest pursuant to a statutory or regulatory scheme. See Fifth Ave. Presbyterian Church v. City of New York, 293 F. 3d 570, 573-74 (2d Cir. 2002); Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000); Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999); Latino Officers Assoc. v. City of New York, 196 F. 3d 458, 462 (2d Cir. 1999); Woodfield Equities, L.L.C. v. The Incorporated Village of Patchogue, 357 F. Supp. 2d 622, 635 (E.D.N.Y. 2005).

Were the Court to order the relief plaintiff seeks by ordering Simone and Brandyn's to in effect return to Johannes' custody and staying all state court proceedings, it would be enjoining governmental actions taken in the public interest pursuant to a statutory and regulatory scheme. Clearly, plaintiffs must meet the higher, more rigorous standard.

**Plaintiff Cannot Demonstrate Irreparable Injury**

On a motion for a preliminary injunction, the Court will first consider whether the movant has established that she suffered irreparable injury; "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Reuters Ltd. v. United Press Int'l, Inc., 903 F. 2d 904, 907 (2d Cir. 1990). Neither the Certification of plaintiff's attorney (who happens to be her brother) nor the affidavit of Plaintiff contains any fact that could lead to an inference of irreparable injury. Here, the Complaint seeks the exact same injunctive relief as requested on this motion, and compensatory and punitive damages. Clearly, if Johannes is successful in this matter, she will receive injunctive and monetary relief, i.e., complete relief. Therefore, she cannot demonstrate irreparable injury.

What she seeks to enjoin is essentially an unfavorable determination from a court established for the specific purpose of determining her right to the relief sought here, and which is subject to full appellate process. Indeed, she has already been partially successful in utilizing the appellate process by obtaining a remand to conduct the very proceeding designed to provide the relief sought on this motion..

**There is no clear or substantial likelihood that Plaintiffs will prevail on the merits**

Even when a plaintiff demonstrates that irreparable harm will likely result in the absence of preliminary injunctive relief, courts will decline to enter a preliminary injunction if the plaintiff fails to demonstrate the likelihood of success on the merits.  See New York City Environmental Justice Alliance v. Giuliani, 50 F. Supp 2d 250, 252 (S.D.N.Y. 1999), Latino Officers Ass'n v. City of New York, supra.    As set forth in Points II and II below, plaintiff cannot meet this standard of proof.

## POINT II

**ASSUMING ADULT PLAINTIFF, JOHANNES, HAS A CONSTITUTIONALLY PROTECTED RIGHT TO THE CARE AND CUSTODY OF INFANT PLAINTIFFS SIMONE AND BRANDYN THE FAMILY COURT PROCEEDINGS AFFORDED HER DUE PROCESS.**

In order to claim that either a substantive or procedural due process right has been violated, Plaintiffs must, as a threshold matter, establish that they have a liberty interest that is protected by the Constitution.  See Harley v. City of New York, 36 F.Supp. 2d 136, 140 (E.D.N.Y.), aff'd, 208 F.3d 203 (2d Cir. 2000).  A liberty interest may arise from either the Due Process Clause itself, or from the laws of the States. Rodriquez v. McLoughlin, 214 F.3d 328,

337 (2d Cir. 2000), citing <u>Kentucky Department of Corrections v. Thompson</u>, 490 U.S. 454, 460, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989).

Assuming that Johannes has a protected liberty interest in her relationship with her grandchildren, there is nothing that occurred in the Family Court that deprived plaintiffs of substantive or procedural due process. Plaintiff Johannes simply doesn't like the results of the proceedings.

Plaintiff alleges that the hearings held by the Family Court constituted a practice or policy of removing children from their homes "without probable cause to believe that continuing in the care of their mothers presents an imminent danger to the child's life or health, without due process of law, and based upon constitutionally inadequate investigations" (Certification of Alfredo Johannes, Par. 21).

In fact, the whole statutory scheme of the Family Court Act with respect to abuse and neglect cases is designed to provide for due process. Upon the filing of the neglect petition, a preliminary hearing was held pursuant to Family Court Act, §1027 on October 19, 2007. That resulted in the temporary removal of the children. On the same day Johannes requested a hearing pursuant to §1028 of the Act, for return of the children, even though counsel was present at the §1027 hearing. The §1028 hearing was scheduled for four days later, and thereafter the parties negotiated a proposed settlement whereby the children would go where they now reside, with plaintiff's daughter.

Subsequently, Johannes moved for dismissal or summary judgment dismissing the petition, and when she lost she appealed to the Appellate Division as of right pursuant to Family Court Act §1112. She then sought interim relief from the Appellate Division. She obtained that relief, to the extent that the Appellate Division directed resumption of the §1028 hearing.

Johannes did not testify or call any witnesses to testify in her behalf. There was some kind of proffer of expert testimony which was rejected by the Family Court, and the Court determined that the evidence presented in support of the petition was sufficient to establish imminent danger to the children if they were to return to Johannes' home.

Pursuant to Family Court Act §1112, Plaintiff had the right to a direct appeal to the Appellate Division from that determination. That Court could have determined the propriety of the family Court's evidentiary rulings and conclusions. Apparently plaintiff chose to seek relief from this Court instead.

Plaintiff attempts to bring this case under the penumbra of <u>Nicholson v. Scopetta</u>, 344 F. 3d 154 (2d Cir. 2003) and <u>Nicholson v. Scopetta</u>, 3 N.Y. 3d 357 (2004). Those related cases dealt with whether a mere showing that the mother was a victim of domestic violence was sufficient grounds for removal of children without proof that there was an imminent risk to the children by virtue of them having witnessed the violence.

In the proceedings held in this case, it was made quite clear that it was not the mere fact of the adult's behavior that resulted in the removal, but the effect on the child, i.e., excessive examinations, treatment and medication. Whether or not Johannes has Munchausen Syndrome by Proxy is only relevant to its effect on the children. The Family Court concluded that Plaintiff's behavior put Simone in imminent risk. Plaintiff had the right to a full and fairing hearing on that issue. But chose not to prevent evidence. There is no merit to plaintiffs' claims..

## POINT III

**THE INTERESTS OF FEDERAL-STATE COMITY MILITATE AGAINST THE EXERCISE OF INTRUSIVE FEDERAL INJUNCTIVE POWER IN AN AREA OF FUNDAMENTAL STATE CONCERN.**

**Lack of Subject Matter Jurisdiction**

It is well settled that matters of child welfare are of particular State concern. See, e.g., Moore v. Sims, 442 U.S. 415, 435 (1979) (noting that " [f]amily relations are a traditional area of state concern"); Neutering v. Broach, 732 F. Supp. 333, 341 (E.D.N.Y. 1990) ("It hardly bears repeating that state courts have a paramount if not exclusive interest in child custody cases."). The Supreme Court has even recognized a domestic relations exception to diversity jurisdiction which is applied in non diversity cases as well. Ankenbrandt v. Richards, 504 U.S. 689 (1992).

Although narrow in scope, this exception prevents federal courts from hearing issues relating to the custody of minors, and from deciding civil rights actions arising out of state court domestic relations proceedings. See Rabinowitz v. New York, 329 F. Supp. 2d 373, 375 (E.D.N.Y. 2004); Torres v. Family Court/Administration for Children's Services, 2001 U.S. Dist. LEXIS 14751 at *4 (S.D.N.Y.) (claims against ACS and Family Court fall within ambit of cases for which there is no federal jurisdiction because the gravamen of claims involves child custody). An attempt to have the federal courts exercise intrusive injunctive power in matters such as those plaintiffs bring to this Court is, as one court has described, "an abortive attempt to involve the federal courts in domestic relations matters best left to the states." See Neustering v. Broach, 732 F. Supp. 333, 339 (E.D.N.Y. 1990) (citing Hernstadt v. Hernstadt, 373 F. 2d 316, 217 (2d Cir. 1967)). See Lomtevas v. Lomtevas, 2006 U.S. Dist. Lexis 5820 (E.D.N.Y. 2006).

## The Rooker-Feldman Doctrine

In <u>Phifer v. City of New York</u>, 289 F.3d 49 (200), the Second Circuit

Court of Appeals said:

> A challenge under the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction."" <u>*Moccio v. New York State Office of Court Admin.*</u>, 95 F.3d 195, 198 (2d Cir. 1996). We review *de novo* a district court's determination that, as a matter of law, it lacks jurisdiction over the case. <u>*Rivers v. McLeod*</u>, 252 F.3d 99, 101 (2d Cir. 2001) (per curiam); <u>*Moccio*</u>, 95 F.3d at 198. Because the defendants' challenge is to subject matter jurisdiction, we may consider materials extrinsic to the complaint. <u>*United States v. Vazquez*</u>, 145 F.3d 74, 80 (2d Cir. 1998). A plaintiff [**12] asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. <u>*Makarova v. United States*</u>, 201 F.3d 110, 113 (2d Cir.2000).
>
> This appeal requires that we determine whether the *Rooker-Feldman* doctrine bars the lower federal courts from reviewing the plaintiff's constitutional claims. We do not examine here the merits of those claims. The *Rooker-Feldman* doctrine holds that inferior federal courts lack subject matter jurisdiction "over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." <u>*Moccio*</u>, 95 F.3d at 197. In <u>*Rooker v. Fidelity Trust Company*</u>, 263 U.S. 413, 416, 68 L. Ed. 362, 44 S. Ct. 149 (1923), the Supreme Court explained that the jurisdiction of the district courts is strictly original and no federal court, other than the Supreme Court, can consider a claim to reverse or modify a state court judgment. In <u>*District of Columbia Court of Appeals v. Feldman*</u>, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983), the Supreme Court expanded upon [**13] this principle and held that to the extent that the plaintiff's claims before the district court were "inextricably intertwined" with the state court's determinations, the district court did not have jurisdiction to entertain those claims. <u>*Id.*</u> at 483

n.16.

Here, there is no question that what is involved are questions of custody, neglect and visitation. Phifer squarely held that attacks on the Family Court's decisions regarding custody, neglect and visitations are barred by the Rooker-Feldman doctrine. As the Family Court could not give money damages, the preclusion is in the nature of collateral estoppel rather than res judicata, but nevertheless it is issue preclusion. The issues raised here are ""inextricably intertwined"" with the issues decided in Family Court; there is no allegation that the court lacked jurisdiction to make the findings and issue the rulings it did, merely the result of those findings and rulings. See Shapiro v. Kronfeld, 2004 U.S. Dist. Lexis 23807 (S.D.N.Y. 2004). See also Holbert v. Cohen-Gallet, 2006 U.S. Dist Lexis 1869 (E.D.N.Y. 2006).

The fact that the family Court did not agree with Johannes' procedural gambits does not rise to a constitutional violation for which this Court is the only avenue of relief.

**Younger Abstention**

Even if the Court were to determine that federal jurisdiction lies, it should nevertheless abstain from exercising such jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37 (1971). Under Younger, abstention is appropriate if (1) there is an ongoing State proceeding; (2) an important State interest in implicated; and (3) the plaintiff has an avenue for review of constitutional claims in the State court. See Philip Morris, Inc., v. Blumenthal, 123 F. 3d 103, 105 (2d Cir. 1997). These conditions are easily met in this case.

First, there are two ongoing proceedings pending in State court. There is the proceeding under § 1027 which is on appeal, and if appealed, the proceeding pursuant to §1028.. Second, custody and visitation are issues that implicate important State issues. See Moore v. Sims, 442 U.S. 415, 435 (1979); Nicholson v. Scoppetta, 344 F. 3d 154, 168 (2d Cir. 2003)

(family law is an area of traditional state concern). Finally, plaintiffs have an available avenue to raise their constitutional claims. With respect to plaintiff Johannes's claims arising out of the alleged deprivation of her custodial rights, plaintiff has the opportunity to challenge the constitutionality of State custody proceedings in the State court, as such courts are fully competent to decide federal constitutional questions. Moore, 442 U.S. at 430.

Plaintiff Johannes seeks to have this Court make a decision about where Simone and Brandyn will live pending the resolution of this lawsuit. She seeks an order that Simone and Brandyn immediately return to live with her and that all attempts in the State court to determine custody be stayed. Granting this relief would have a tremendously disruptive impact on the State court proceedings. At this point, ACS is effectively barred from performing its statutorily mandated duty of oversight of the welfare of the children. Moreover, in seeking to effect a prohibition on defendants' resort to the Family Court to adjudicate custody, plaintiffs would have this Court act as the gatekeeper to the State's Family Court procedures and remedies.

In Grieve v. Tamerin, Civ No. 00-CV-3824 (JG) (E.D.N.Y. August 25, 2000), 2000 U.S. Dist. LEXIS 12210, aff'd 269 F. 3d 149 (2d Cir. 2001). Judge Gleason emphasized the need for extreme caution and sensitivity to concerns of federal-State comity where, as here, questions of child custody were sub judice in the State forum. In Grieve, the plaintiff, an Israeli national, brought an action by order to show cause in federal court pursuant to the child abduction provisions of the Hague Convention, seeking an order returning his daughter to his custody and staying pending custody proceedings in State court. In declining to exercise federal jurisdiction over the otherwise properly pleaded federal claim, the Court looked not to the specific interests in the particular case, but to the State's larger and more compelling interest in the adjudicative mechanisms it has made available to address child custody matters:

In assessing the importance of the state's interest in a given proceeding, I must look not to its interest in the outcome of a particular case, but rather to "the importance of the generic proceeding to the State." *Phillip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989). There is no question that the states have a strong interest in domestic relations matters generally and child custody questions in particular. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ...; *Neustein v. Orbach*, 732 F. Supp. 333, 341 (E.D.N.Y. 1990) ("In this narrow area of law (child custody), we should be especially careful to avoid unnecessary or untimely interference with the State's administration of its domestic policies." (quoting *Mendez v. Heller*, 530 F.2d 457, 461 (2d Cir. 1976) (Oakes, J., concurring)).

See also Holbert v. Cohen-Gallet, supra  and Miller  v. County of Nassau, 467 F.Supp 2d 308 (E.D.N.Y. 2006). This Court should abstain from granting the requested relief, in recognition of the need for deference identified by this Court in Grieve.

For this Court to take action nullifying the proceedings in the Family Court would also violate the federal anti-injunction statute, 28 U.S. C. §2283. Alpern v. Lieb, 38 F.3d 933 (7th Cir. 2004); Petersen v. Fox, 488 F. Supp. 2d 18 (D.N.H. 2007).

The statute provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Clearly, none of the statutory exemptions apply and grant of the relief sought would be inappropriate.

## CONCLUSION

For the reasons set forth above, municipal defendants respectfully request that this Court deny plaintiffs' motion for a preliminary injunction, together with such other and further relief as the Court deems appropriate.

Dated: New York, New York
      April 7, 2008

                          MICHAEL A CARDOZO
                          Corporation Counsel of the
                           City of New York
                          Attorney for Defendants
                          100 Church Street, Room 2-178
                          New York, New York  10007
                          Tel.: (212) 442-3329

By: _____
                      Jesse I. Levine (8829)
                      Assistant Corporation Counsel